UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

BEULA LEIGH BOOTHE )
)
v. ) No. 2:14-CV-383
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )

## MEMORANDUM OPINION

This Social Security appeal is before the Court for consideration of the plaintiff's objections [Doc. 16] to the Report and Recommendation filed by United States Magistrate Judge Bruce H. Guyton [Doc. 14]. The Commissioner has not responded to plaintiff's objections and the time for doing so has passed. E.D. Tenn. L.R. 7.1(a), 7.2. Magistrate Judge Guyton found that substantial evidence supported the findings of the Admissions Law Judge (ALJ). Magistrate Judge Guyton recommended that plaintiff's motion for summary judgment [Doc. 10] be denied and the Commissioner's motion for summary judgment [Doc. 12] be granted.

I. PROCEDURAL POSTURE

Plaintiff applied for disability insurance benefits under Title II of the Social Security Act (the "Act") on May 28, 2012, alleging an onset disability date of April 1, 2011. (Tr. 63, 119-122). Her application was denied on July 27, 2012. (Tr. 78-80). A request for reconsideration was denied on September 14, 2012. (Tr. 82-83). A hearing was held before an Admissions Law Judge ("ALJ") on August 13, 2013, and an order denying benefits issued on September 2, 2013. (Tr. 13-27). The Appeals Council denied the plaintiff's request for review and the ALJ's decision became final. (Tr. 1-4). Having exhausted her admissions remedies, Plaintiff filed a complaint with this Court on December 29, 2014, seeking judicial review of the Commissioner's final

decision under Section 405(g) of the Social Security Act. [Doc. 1].

## II. STANDARD OF REVIEW

The Court's review of Magistrate Judge Guyton's Report and Recommendation is *de novo.* 28 U.S.C. § 636(b). However, the Court's review is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.,* 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, the Court will uphold the ALJ's decision if it is supported by substantial evidence. *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison,* 305 U.S. at 229).

"Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan,* 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986) (en banc). This standard of review is consistent with the rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan,* 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.,* 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the court would have come to different factual conclusions as to the plaintiff's

2

claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg,* 987 F.2d at 331.

The court considers only specific objections to the magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Smith v. Detroit Fed'n of Teachers*, *Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

### III. THE DISABILITY EVALUATION AND BURDEN OF PROOF

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. *Id.* at 529. Once the ALJ determines that a claimant cannot perform past relevant work, the burden shifts to the Commissioner to prove that the plaintiff possesses the capacity to perform other substantial gainful activity that exists in the national economy. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). The C.F.R provides that "[w]ork exists in the national economy when there is a

3

significant number of jobs (in one or more occupations) having requirements which [claimant is] able to meet with [her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966. Thus, the Commissioner must present substantial evidence that the claimant has the vocational qualifications to perform other occupations. *Varley*, 820 F.2d at 779 (citing *O'Banner v. Secretary of Health, Education & Welfare,* 587 F.2d 321, 323 (6th Cir. 1978)).

## IV. FACTUAL BACKGROUND

Plaintiff was 56 years old at the time of the alleged onset of disability and had a work history as a registered nurse. (Tr. 23). The ALJ found that plaintiff has the following severe impairments: lumbar degenerative disk disease, Turloff's cysts, bursitis, and arthralgias. (Tr. 18). Taking these impairments into consideration, the ALJ found that Plaintiff was unable to perform any past relevant work, but retained the residual functional capacity ("RFC") to perform light work, with the following physical limitations: no climbing ladders, ropes, or scaffolds; occasional postural activities such as climbing ramps and stairs, balancing, kneeling, stooping crouching, and crawling; occasional overhead reaching with the right arm; frequent but not continuous fingering; and no concentrated exposure to vibration. (Tr. 20).

The ALJ concluded that the plaintiff could not perform her previous work, but that she had skills that were transferable to other occupations that exist in significant numbers in the national economy. (Tr. 23). Basing his findings on the testimony of a VE, the ALJ identified the occupations of admissions clerk and quality assurance nurse as work that plaintiff could perform. (Tr. 24). Accordingly, the ALJ determined that the plaintiff was not disabled and plaintiff's application for disability benefits was denied.

## V. Plaintiff's Objection

4

Plaintiff's objection concerns the fifth step of the disability evaluation. Plaintiff objects to the magistrate judge's determination that the ALJ properly evaluated the testimony regarding her transferable skills. She argues that the testimony, in particular the testimony regarding quality assurance positions, was ambiguous and did not show that plaintiff had skills that would transfer to other occupations existing in significant numbers in the national economy.

At plaintiff's disability hearing, the Commissioner presented testimony of a vocational expert ("VE") to prove that plaintiff could perform work available in the national economy. The VE testified to the plaintiff's work history as a registered nurse. (Tr. 48). She discussed the Dictionary of Occupational Titles, and voiced her disagreement with the classification of registered nurse occupation as "light" work:

> VE: [The DOT] describes nursing as light. However, the DOT was written before they discontinued the position called orderly and nurses have had more and more to physically handle hands on patients and large equipment that was not in existence prior to the DOT. So I'd stipulate my differing with [the DOT classification] based on job analysis and years of, of hearing the same story of, of all the job positions involving nursing. The only one that is light is a QA review position or an instructor.

(Tr. 48). She further testified:

> ALJ: Let's assume a hypothetical individual the same age, education and work background as the claimant, that is an individual who is in the -- advanced age category, high school plus education and previous work experience as you've just described. Assume further the set hypothetical individual is only capable of working within the following functional limitations, light exertion no climbing ladders, ropes, or scaffolds -- otherwise occasional postural activities, such as climbing ramps and stairs, balancing, kneeling, stooping, crouching, crawling, occasional overhead reaching with the right dominant arm, frequent but not continuous fingering, no concentrated exposure to vibration. Now my question -- my next question would [be] does the claimant have skills that would transfer to work within that residual functional capacity?
>
> VE: Well, the only one was the aforementioned case reviewing type nurse which -- but that's, that's only at a skilled level, so it's probably not relevant. And then according to the DOT, the other job would be an admissions clerk. There would

5

> be some transferability to that, such as knowing basic diagnosis coding and protocol that involve admissions, triage, procedure, things of that sort.
>
> . . .
>
> ALJ: How many jobs exist in the region and nation for admissions clerk?
>
> VE: For an admissions clerk in the region, probably 50, and in this United States probably 80,000, Your Honor. It's not a ubiquitous job positions [sic] and it's standardly [sic] in hospital[s] that have an emergency room. . .
>
> ALJ: What about the other position that you mentioned, the quality assurance?
>
> VE: Those jobs [are] available. Again, they're, they're small numbers and they are a skilled level position.
>
> ALJ: Would the clamant have skills that would transfer to a quality assurance position?
>
> VE: Yes.
>
> ALJ: Well, what kind of -- what skills would transfer to that?
>
> VE: Well, all the records capturing in nursing is transferable. The - - again ICD treatment protocol, the pharmacology that nurses know.
>
> ALJ: And how many of those jobs existing in region and the nation?
>
> VE: [I]n the State of Tennessee there are probably 3,000 case reviewers and there are probably 212,000 in the United States. It's an SVP:7 level job though and it requires the RN skills.
>
> ALJ: 3,000 in –
>
> VE: It can't be done by—
>
> ALJ: the state. How many in the nation?
>
> VE: Probably 200,000. []

(Tr. 48-51). She testified that adding a requirement for a sit/stand option and occasional use of the upper extremities to the plaintiff's RFC would eliminate the admissions clerk and quality assurance positions. (Tr. 51).

6

Relying on the VE's testimony, the ALJ determined that the plaintiff had acquired the following work skills: nursing records and diagnosis coding knowledge, pharmacology knowledge, triage procedure, and treatment protocol. (Tr. at 23). The ALJ also found that:

> The vocational expert was asked if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, residual functional capacity as the claimant, and which require skills acquired in the claimant's past relevant work but no additional skills. The vocational expert responded and testified that representative occupations such an individual could perform include: [admissions clerk and quality assurance positions.]

(Tr. 24). The ALJ thus concluded that plaintiff was not disabled. (Tr. 24).

With regard to the quality assurance position, the Court agrees that the VE's testimony is confusing. The initial source of the confusion is that the ALJ asked a compound hypothetical, which required the VE to first identify "work within [plaintiff's] RFC" and *then* to determine whether plaintiff had transferable skills. Instead of responding to the question asked, the VE gave an indirect answer and then backtracked. Her response—"the only one would be the aforementioned case reviewing type nurse"—seems to identify the position of quality assurance nurse/case reviewer[1] as within the plaintiff's capabilities. However, the immediate qualification—"but that, that's only at a skilled level, so it's probably not relevant" fails to establish whether plaintiff had the necessary transferable skills and implied that she did not believe it was appropriate for the plaintiff, for whatever reason. Later, when she spoke again about the skills of a quality assurance nurse, she stated that the work was available, but "again [] they are a skilled position" and "[i]t's SVP: 7 level job though *and* it requires the RN skills." (Tr. at 50) (emphasis added). The transcript indicates that she may have continued her attempt to

---

[1] The magistrate judge concluded, and this Court agrees, that the VE was understood to be referencing the same position when she used the terms "case review" and "quality assurance."

7

explain why plaintiff would be limited as to that position—"It can't be done by--"—but the ALJ did not allow her to finish her testimony.

The magistrate judge concluded that the ALJ's hypothetical question asked the VE to identify jobs requiring only skills acquired in plaintiff's past relevant work. If this is a fair reading of the hypothetical, and the Court agrees that it is, the VE failed to respond in kind. Her testimony implies that the case reviewer position requires more skills than a registered nurse or that some other reason would prohibit plaintiff from working in that occupation. Whether or not she meant to imply that or something different is unclear because the ALJ did not ask her why she repeatedly attempted to qualify her statements about the plaintiff's ability to perform the work. "[I]f the [vocational] expert is unable to testify without qualification about the jobs a claimant can perform, the ALJ may not rely on his opinion." *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 481 (6th Cir. 1988); *see also Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (interpreting earlier case as finding that there was no substantial evidence to support other available work because of "the failure of the vocational expert to testify without qualification that jobs which the plaintiff could perform actually existed in the economy.") (*citing Graves v. Sec'y of Health, Educ., & Welfare*, 473 F.2d 807, 809 (6th Cir. 1973)). Why the VE did not think the QA position was relevant to plaintiff, what significance she saw in the position's skill level, and who she believed the work "can't be done by" unanswered questions. The VE did not give unqualified testimony that the plaintiff could perform quality assurance work and the ALJ thus did not have substantial evidence to support his finding that she was not disabled.

8

**VI.	Conclusion**

The plaintiff's objection is sustained. This case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further evaluation of the plaintiff's claim in accordance with this ruling. An appropriate order will be entered.

ENTER:

    s/ R. Leon Jordan
UNITED STATES DISTRICT JUDGE